**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ENVIROGEN TECHNOLOGIES, INC.,

      Plaintiff,

          v.

MAXIM CONSTRUCTION
CORPORATION, INC. and CITY OF
CRYSTAL LAKE,

      Defendants.

No. 14 C 2090
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant City of Crystal Lake's Motion for Default Judgment Against Maxim Construction Corporation and for Dismissal of Maxim's Cross-Claim for Want of Prosecution. For the following reasons, Defendant City of Crystal Lake's Motion is granted.

## I. PROCEDURAL BACKGROUND

The conflict between Plaintiff Envirogen Technologies, Inc. ("Envirogen") and Defendant Maxim Construction Corporation ("Maxim") arises from a subcontract between the two corporations to supply a water treatment system for the City of Crystal Lake ("the City"). In 2014 Envirogen filed its suit against Maxim in this Court, eventually adding the City as a defendant in its Second Amended Complaint ("SAC"). The SAC alleged that Maxim breached the subcontractor agreement by failing to pay Envirogen for the ion exchange water treatment system and sought a declaratory judgment stating that the City has "no claim, cause of action, remedy, or right of any kind" under the Purchase Order between Envirogen and Maxim. The City filed a Cross-Claim against Maxim for breach of the construction contract and a Counterclaim against Envirogen for breach of contract based on the City's status as third party

1

beneficiary to the Purchase Order.

On May 9, 2016, while in the midst of discovery, this Court granted Maxim's attorneys' motions to withdraw based on Maxim's unpaid legal fees. At the next two status hearings on May 12 and June 23, no attorneys appeared for Maxim and neither opposing counsel nor the Court was contacted regarding Maxim's failure to appear. For reasons explained on the docket, Envirogen moved for and was granted default against Maxim on July 7, 2016. At this point, Maxim reappeared in the case with new counsel. After a hearing, Envirogen won default judgment against Maxim on September 6, 2016. That same day, the City moved for default judgment against Maxim and for dismissal of Maxim's counterclaim for want of prosecution and it is this motion that is before the Court now.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 55, a court may enter a default judgment when a defendant fails to plead or otherwise defend. Fed. R. Civ. P. 55(a). On a motion for default judgment, a court takes all well-pleaded allegations as to liability as true. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994). The decision to enter a default judgment lies within the district court's discretion. *O'Brien v. R.J. O'Brien & Assocs.*, 998 F.2d 1394, 1398 (7th Cir. 1993).

Rule 55(c) allows a court to "set aside a default judgment under Rule 60(b)." FED. R. CIV. P. 55(c). Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party ... from a final judgment [due to] (1) mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b). Excusable neglect "encompasses 'all relevant circumstances surrounding the party's omission,'" including such factors as "the reason for the default, whether it was within the movant's control, the danger of prejudice to the non-movant, and the interests of judicial administration." *Tygris Asset Finance, Inc. v. Szollas,* No. 09 C 4488, 2010 WL 2610652, at *1

(N.D. Ill. June 21, 2010) (quoting *Casio Comp. Co. v. Noren,* 35 Fed. Appx. 247, 250 (7th Cir. 2002)). *See also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 389 (1993). Despite this "flexible understanding," however, "'[i]nadvertence, ignorance of the rules, or mistakes construing the rules' are not ordinarily recognized as forms of excusable neglect,'" and "negligent handling of a case, by itself, will not excuse untimely behavior or satisfy the showing required by Rule 60(b)." *Casio Comp. Co.,* 35 Fed. Appx. at 250 (citing *Pioneer*, 507 U.S. at 391-32 and *Norgaard v. DePuy Orthopaedics, Inc.,* 121 F.3d 1074, 1075 (7th Cir. 1997)). The rule instead "establishes a high hurdle for parties seeking to avoid default judgments," *Jones v. Phipps,* 39 F.3d 158, 162 (7th Cir. 1994), and relief is proper only in "exceptional circumstances." *Swaim v. Moltan Co.,* 73 F.3d 711, 722 (7th Cir. 1996).

To set aside a default judgment, "a specialized three-part standard has evolved which squarely places the burden on the moving party to show: (1) 'good cause' for the default; (2) quick action to correct the default; and (3) the existence of a meritorious defense to the original complaint." *Jones,* 39 F.3d at 162; *Yash Techs., Inc. v. Prospeed Trading, Inc.,* No. 07 C 4054, 2009 WL 2928095, at *4 (C.D.Ill. Sept. 9, 2009). "Failure to make any of the three showings warrants denial of a motion to vacate." *Wells Fargo Equip. Fin., Inc. v. PMRC Servs., LLC,* No. 10 C 2438, 2011 WL 635861, at *2 (N.D.Ill. Feb. 11, 2011).

## III. DISCUSSION

Maxim argues that the default should be vacated because extenuating circumstances provide good cause for their absence from the case. Specifically, Maxim explains that its commercial liability insurer, Westfield Insurance Company ("Westfield") initially refused to indemnify Maxim for the defense fees and costs in this case and filed a lawsuit in October 2015 seeking a declaration that it owed no duty to defend or indemnify Maxim. *Westfield Ins. Co. v.*

*Maxim Construction Corp., Inc., et al.,* 1:15-cv-09358 (N.D. Ill. 2015). Finding that it could not afford to defend itself against both the Envirogen and the Westfield lawsuits, Maxim decided to devote its resources to defending itself against Westfield with the hope that a victory in that case would afford them indemnification in the Envirogen case. At some undisclosed time after Maxim effectively disappeared from the case, Westfield agreed to provide Maxim with a defense in the Envirogen case and retained Leahy, Eisenberg & Fraenkel attorneys to represent Maxim. Those attorneys entered their appearances on July 20, 2016 and explained to the Court for the first time Maxim's behind-the-scenes efforts to straighten out their representation issues.

In the briefing of this motion, Maxim added that it did not contact the Court or its opponent to inform them of the situation or request a continuance because of the prohibition against corporations appearing in court pro se. *See e.g., In re IFC Credit Corp.*, 663 F.3d 315, 318 (7th Cir. 2011) ("Corporations unlike human beings are not permitted to litigate pro se."). Maxim apparently interprets that rule to include a prohibition on contacting the clerks, courtroom deputy, or opposing party to explain that a corporation has found itself unrepresented and needs time to find counsel. In fact, such communications would not only be allowed but would be vastly preferable to disappearing from the case without a word of explanation. Maxim has offered a belated explanation but the prohibition on pro se representation for corporations is not good cause for Maxim's prolonged silence in this matter. Moreover, to the extent Maxim argues that it misunderstood the scope of the prohibition, "'[i]nadvertence, ignorance of the rules, or mistakes construing the rules' are not ordinarily recognized as forms of excusable neglect," and "negligent handling of a case, by itself, will not excuse untimely behavior or satisfy the showing required by Rule 60(b)." *Casio Comp. Co.,* 35 Fed. Appx. at 250 (citing *Pioneer*, 507 U.S. at 391-32 and *Norgaard v. DePuy Orthopaedics, Inc.,* 121 F.3d 1074, 1075 (7th Cir. 1997)).

Maxim also raises the issue of the City's belated filing of its motion for default. But the City explained at earlier proceedings and in the most recent hearing that a default judgment against Maxim was not initially advantageous for the City and became necessary only after the default judgment sought by Envirogen was entered.

Finally, Maxim argues that this second default judgment will result in inconsistent judgments because Envirogen's and the City's well-pleaded allegations are mutually exclusive, yet the defaults require that both sets of allegations are accepted as true. For example, the City (and Maxim) allege the water treatment system did not satisfy the contractual performance requirements, while Envirogen contends that it did. Without citing any law, Maxim argues that to be found doubly liable on the basis of inconsistent theories is unjust.

The Court is mindful of the fact that, in these convoluted circumstances, a double default that raises questions about internal consistency may seem to be particularly harsh. While the Seventh Circuit has disfavored entry of inconsistent default judgments where the inconsistency arises between *multiple* defendants, it has not addressed the issue of entering two possibly inconsistent default judgments against a single defendant. Even with regard to inconsistent judgments between multiple defendants, the Seventh Circuit has construed that restriction narrowly, suggesting that it is not interested in broadly curtailing the entry of default judgments beyond the specific set of circumstances it has already recognized. *State Farm Mut. Auto. Ins. Co. v. Jackson*, 736 F. Supp. 958, 961 (S.D. Ind. 1990) (citing *Marshall & Ilsley Trust Co. v. Pate,* 819 F.2d 806, 812 (7th Cir.1987); *In re Uranium Antitrust Litigation,* 617 F.2d 1248, 1257-58 (7th Cir.1980)). In short, there is no precedent in this Circuit mandating that a default judgment cannot be entered in the context of this case.

Additionally, the Court recognizes that if the loss does not fall on Maxim it will be

shifted to the City, which has patently done nothing wrong. The only equitable solution in this situation is to allocate the loss to the defaulting party rather than the active and compliant party.

**IV. CONCLUSION**

For the foregoing reasons, Defendant City of Crystal Lake's Motion is granted.

ENTER:

James B. Zagel
United States District Judge

DATE: September 30, 2016